IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN P. PARISI and              :
COLLEEN E. PARISI,                :          CIVIL ACTION NO. **3:CV-09-2399**
                                  :
          Plaintiffs              :          (Judge Caputo)
                                  :
          v.                      :          (Magistrate Judge Blewitt)
                                  :
WELLS FARGO HOME MORTGAGE,        :
INC., et al.,                     :
                                  :
          Defendants              :

## REPORT AND RECOMMENDATION

### I. Background.

On November 9, 2009, Plaintiffs, Steven P. and Colleen E. Parisi, husband and wife, residents of Kunkletown, Pennsylvania, filed, through counsel, the instant civil action alleging state law claims of breach of contract, violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1, *et seq.,* as well as Intentional Interference with Contractual Relationship ("IICR") claims.  Plaintiffs originally filed their action raising the mentioned state law claims in the Court of Common Pleas of Monroe County, Pennsylvania (No. 10629 CV 09). (Doc. 1, Ex. A).

Named as Defendants were:  Federal Home Loan Mortgage Corporation, Wells Fargo Home Mortgage, Inc., Wells Fargo Bank, N.A., a Division of Wells Fargo Home Mortgage, Inc., and Federal National Mortgage Association.

On December 7, 2009, Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"), timely filed a Notice of Removal pursuant to 28 U.S.C. § 1331 and § 1442, and 12 U.S.C.

§ 1452(f), and removed of this action from state court to the District Court for the Middle District of Pennsylvania. (Doc. 1).

On January 8, 2010, Defendants Wells Fargo Bank, N.A. ("Wells Fargo")[1] and Federal National Mortgage Association ("Fannie Mae") jointly filed an Answer with Affirmative Defenses to Plaintiffs' Complaint. (Doc. 6).

On December 14, 2009, Defendant Freddie Mac filed a Motion to Dismiss Plaintiffs' Complaint as against it pursuant to Fed. R. Civ. P. 12(b)(6), with an attached Brief. (Doc. 2 and Ex. A). Plaintiffs filed their opposition Brief on January 12, 2010. (Doc. 7). On January 25, 2010, Defendant Freddie Mac filed its Reply Brief. (Doc. 8).

On February 17, 2010, we issued a Report and Recommendation ("R&R") and recommended that the Motion to Dismiss of Defendant Freddie Mac (Doc. 2) be granted, and that Defendant Freddie Mac be dismissed entirely from this action.[2] (Doc. 13). On March 12, 2010, the Court issued an Order and adopted our stated R&R, and granted the Motion to Dismiss of Defendant Freddie Mac. (Doc. 12).

On February 4, 2010, Defendant Fannie Mae filed a Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c), as well as a support Brief. (Docs. 9 and 10). Defendant Fannie Mae stated as follows in its Brief:

---

[1]Defendant Wells Fargo represented that Plaintiffs incorrectly named it as Defendants Wells Fargo Home Mortgage, Inc., and Wells Fargo Bank, N.A., a Division of Wells Fargo Montage, Inc., in their Complaint. (Doc. 6, p. 1 and Doc. 48, p. 1). We refer to these two Defendants as "Wells Fargo" herein.

[2]The undersigned has been assigned this case for all pre-trial maters pursuant to 28 U.S.C. §636(b).

> Wells Fargo has since admitted that, at the time Plaintiffs sought a
> loan from it, its own underwriting guidelines prohibited loans to
> convicted felons, and in the course of reviewing the proposed loan,
> Wells Fargo learned that Mr. Parisi is a convicted felon.  Answer of
> Wells Fargo, ¶ 15.  Wells Fargo further admits that it terminated the
> commitment as a result of learning of Mr. Parisi's felony conviction.  *Id.*

(Doc. 10, p. 4).

Plaintiffs failed to file a brief in opposition to Defendant Fannie Mae's Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c), and they did not request an extension of time within which to do so.  Plaintiffs were deemed as not opposing Defendant Fannie Mae's Motion for Judgment on the Pleadings pursuant to Local Rule 7. 6, M.D. Pa.  The Court also found merit to the above quoted argument of Defendant Fannie Mae in its unopposed Motion for Judgment on the Pleadings since it was essentially the same reason why the Court granted Defendant Freddie Mac's Motion to Dismiss.

On March 29, 2010, we filed a Report and Recommendation and recommended that Defendant Fannie Mae's unopposed Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) (Doc. 9) be granted, and that judgment be entered in favor of Defendant Fannie Mae and against Plaintiffs.  It was further recommended that this action be recommitted to the undersigned for further proceedings as against the only remaining Defendant, Wells Fargo. (Doc. 13).  On April 19, 2010, the Court adopted our Doc. 13 Report and Recommendation.  (Doc. 14).

On June 15, 2010, we conducted a joint case management conference with Plaintiffs and remaining Defendant Wells Fargo. (Doc. 24).  We subsequently set the discovery deadline of March 1, 2011, and the dispositive motion deadline March 31, 2011.  (Doc. 26).  Upon Motion of Plaintiffs, the discovery deadline was extended to June 1, 2011, and the dispositive motion deadline

3

was extended to June 30, 2011. (Docs. 30 and 32).  By Order of May 25, 2011, the period of taking

only Rule 39)b)(6) depositions was extended until July 8, 2011. (Doc. 42).  The dispositive motion

deadline was again extended, upon Motion of Defendant Wells Fargo Bank, N.A. (Doc. 43), to

August 12, 2011. (Doc. 44).

    After the discovery deadline expired, on August 12, 2011, Defendant Wells Fargo timely

filed a  Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c), as well as a support Brief.

(**Docs. 48** and 49).  Defendant Wells Fargo also filed its Statement of Undisputed Material Facts

("SMF") as required by Local Rule 56.1, M.D. Pa., along with several exhibits.  (Doc. 50).  On

August 25, 2011, Plaintiffs filed a Motion for a 30-day Extension of Time to file their opposition

brief to Defendant Wells Fargo's Motion for Summary Judgment, and we granted it on August 29,

2011.  (Docs. 51 52).  Thus, Plaintiffs' opposition brief and their response to Defendant Wells

Fargo's SMF were due by October 2, 2011.

    Plaintiffs failed to file their brief in opposition to Defendant Wells Fargo's Motion for

Summary Judgment and their response to Defendant's SMF, and they did not request another

extension of time within which to do so.  We gave Plaintiffs an additional twenty-nine (29) days to

file  their brief in opposition to Defendant Wells Fargo's Motion for Summary Judgment and their

response to Defendant's SMF.  Despite the *sua sponte* extension of time we afforded Plaintiffs, they

still failed to file their opposition brief and response to Defendant's SMF.  Plaintiffs are deemed as

not opposing Defendant Wells Fargo's Motion for Summary Judgment pursuant to Local Rule 7. 6,

M.D. Pa., and Plaintiffs are deemed as not opposing Defendant Wells Fargo's SMF pursuant to Local

Rule 56.1, M.D. Pa.  We also find merit to the arguments of Defendant Wells Fargo in its

unopposed Motion for Summary Judgment based on its undisputed evidence.

## II. Allegations of Complaint.

Since we have detailed Plaintiffs' allegations in their Complaint in our prior Docs. 11 and 13 R&R's, we do not fully repeat them herein.  Rather, we mostly limit our discussion to Plaintiffs' allegations as against Defendant Wells Fargo.

Defendant Wells Fargo was sued by Plaintiffs for one count (Count I) of breach of contract and one count (Count II) of violation of the Unfair Trade Practices and Consumer Protection Law. Plaintiffs aver that on July 9, 2007, they received a prior mortgage from Defendant Wells Fargo which was secured by their home.  Plaintiff state that their July 9, 2007 mortgage with Defendant Wells Fargo was sold (on the secondary market) to either Defendant Fannie Mae or Defendant Freddie Mac.[3]  Plaintiffs state that on January 16, 2009, they submitted another mortgage application to Defendant Wells Fargo to refinance the July 9, 2007 mortgage on their home, and that on February 26, 2009, Defendant Wells Fargo approved their mortgage application and a mortgage commitment was issued.  (*See* Doc. 1, Ex. C).  Plaintiffs then state that they paid off the July 9, 2007 mortgage on their home on March 27, 2009.

Plaintiffs aver that on May 29, 2009, they submitted a new mortgage application to Defendant Wells Fargo to obtain another mortgage on their home.  Plaintiff state that on July 1, 2009, Defendant Wells Fargo approved their mortgage application and a Mortgage Commitment

---

[3]Defendant Freddie Mac noted that it purchased Plaintiffs' first mortgage loan (July 9, 2007) from Wells Fargo.  (Doc. 2, Ex. A Brief, p. 2, n. 1). Plaintiffs also alleged that Freddie Mac purchased their July 9, 2007 mortgage after Plaintiff Steven Parisi's criminal conviction became "common knowledge throughout Northeastern Pennsylvania" in April of 2006.

was issued. (*See* Doc. 1, Ex. E).[4]  Plaintiffs aver that they met or could meet all of the conditions contained in the July 1, 2009 Mortgage Commitment Letter issued by Defendant Wells Fargo.

Plaintiffs allege that Defendant Wells Fargo intended on selling their residential mortgage to either Defendant Fannie Mac or Defendant Freddie Mac.  Plaintiffs aver that on July 20, 2009, Defendant Wells Fargo "improperly and wrongfully terminated the said [June 29, 2009 Mortgage] Commitment" based on the reason that Plaintiff Steven Parisi was a convicted felon.  (*See* Doc. 1, Ex. F).   Plaintiffs allege that prior to Defendant Wells Fargo's termination of their Mortgage commitment, Defendant Wells Fargo's agent, Kimberly Friedman, advised Plaintiff Steven Parisi that either all Defendants, Fannie Mae, Freddie Mac and/or Wells Fargo,  or one of the Defendants, "would not purchase a loan extended to a convicted felon" based on the guidelines of one of the Defendants.  (Doc. 1, Ex. A, p. 10).[5]  Plaintiffs state that "there are no guidelines of Fannie Mae or Freddie Mac which prohibit the purchase by Fannie Mae or Freddie Mac of a residential mortgage extended by a financial institution." (*Id*.).  Plaintiffs state that Defendant Wells Fargo never inquired whether they had criminal records with respect to their prior mortgages with Wells Fargo, and that Wells Fargo approved of their prior mortgages despite Mr. Parisi's conviction.

---

[4]As we previously noted, Ex. E was missing from Plaintiffs' Complaint.  However, the Commitment Letter dated June 29, 2009, Defendant Wells Fargo issued to Plaintiffs is found at Doc. 50, Defendant's Statement of Facts, Ex. A-7.  According to Defendant Wells Fargo's undisputed evidence, the Commitment Letter was dated June 29, 2009, and not July 1, 2009, as Plaintiffs indicated in their Complaint.  We use the correct date herein.

[5]Plaintiffs stated that Steven Parisi's criminal record was based on his April 13, 2006 *nolo contendere* plea to forgery, a felony of the third degree, in the Court of Common Pleas of Monroe County, Pennsylvania.  (*See* Doc. 50, Ex. A-6).

Plaintiffs state that there are no federal guidelines, rules or regulations which prohibit a person with a felony record from obtaining a mortgage and that Defendant Wells Fargo did not refer to any such rule or regulation in its Mortgage Commitment Termination Notice.

Plaintiffs aver that after Defendant Wells Fargo terminated the June 29, 2009 Mortgage Commitment, they applied for and received a residential mortgage from Bank of America at a higher interest rate than Defendant Wells Fargo agreed to give them (3.875 % vs. 4%). (Doc. 1, Exs. F-1 and F-2).

Moreover, Plaintiffs aver as follows in Count I, breach of contract claim, against Defendant Wells Fargo:

> 36.     That the Defendant, without just cause or reason, breached the contract with the Plaintiffs granting them a mortgage loan in the amount of $363,000.00.

> 37.     That by reason of the Defendant's breach, the Plaintiffs have been injured and damaged in the following amounts:

>> A.     Appraisal fee - $395.00;

>> B.     Credit and Application Fee  - $445.00;

>> C.     Additional points necessary to close loan  - $1,815.00;

>> D.     Additional interest to be paid over the life of the loan  - $66,929.37

(Doc. 1, Ex. A, p. 12).

In Count II, UTPCPL claim, Plaintiffs aver as follows against Defendant Wells Fargo:

> 39.     That in extending or agreeing to extend loans to the Plaintiffs over a period of time and then terminating a granting of a mortgage loan for reasons unspecified in the application process, the Defendant engaged in fraudulent or deceptive conduct which created a likelihood of confusion

or of misunderstanding in that the Plaintiffs believed that they qualified for a loan, but then were told that they did not when there was no basis for the said termination.

40.     That by reason of the fact that the Defendant engaged in conduct which is violative of the Unfair Trade Practices and Consumer Protection Law, the Plaintiffs are entitled to an award of treble damages and attorney's fees.

(Doc. 1, Ex. A, p. 13).

## III.  Motion for Summary Judgment Standard.

In *Allen v. Fletcher*, 2009 WL 1542767, *2 (M.D. Pa.), the Court outlined the applicable standard to apply when considering a summary judgment motion as follows:

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*
>
> Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265
(1986).

All doubts as to the existence of a genuine issue of material fact must be
resolved against the moving party, and the entire record must be examined
in the light most favorable to the nonmoving party. *White v. Westinghouse
Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has
satisfied its initial burden, the burden shifts to the nonmoving party
to either present affirmative evidence supporting its version of the
material facts or to refute the moving party's contention that the facts entitle
it to judgment as a matter of law. *Anderson,* 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they
are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife
Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In
deciding a motion for summary judgment, "the judge's function is not
himself to weigh the evidence and determine the truth of the matter
but to determine whether there is a genuine issue for trial." *Anderson,* 477
U.S. at 249.

"Material facts" are those which might affect the outcome of the suit. *Justofin v.
Metropolitan Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004). "In determining whether the non-moving party has established each element of its case, the court mst draw all reasonable inferences
in the non-moving party's favor." *Vassalotti v. Wells Fargo Bank, N.A.,* –F.Supp.2d–, 2011 WL
4402145, *4 (E.D. Pa. 9-22-11).

## IV. Statement of Material Facts.

As its arguments in its Summary Judgment Motion and support Brief, Defendant Wells Fargo
asserts that its undisputed evidence reveals that it did not breach its Commitment Letter to Plaintiff
and it did not violate the UTPCPL. Specifically, Defendant Wells Fargo states:

It is undisputed that: (1) Wells Fargo's Commitment Letter included
a provision explicitly allowing Wells Fargo to withdraw its preliminary
approval of Plaintiffs' loan application if it learned fo a material fact
not previously known; (2) Wells Faro has a policy against lending to

known convicted felons; (3) Wells Fargo later learned that Plaintiff Steven Parisi is a convicted felon; (4) Wells Fargo considered making an exception for Steven Parisi but chose not to do so because his felony conviction related to forgery in conjunction with a mortgage application.

(Doc. 49, p. 1).

As stated, Defendant Wells Fargo filed its SMF (Doc. 50), as required by Local Rule 56.1, M.D. Pa. Also, as mentioned, Defendant Wells Fargo attached numerous exhibits to its SMF (Doc. 50, Appendix). Plaintiffs, as stated, failed to file their paragraph-by-paragraph response to Defendant's SMF as they were obliged to do and as they were aware they were required to file.[6] Further, Plaintiffs did not submit any evidence to contest Defendant Wells Fargo's SMF and its evidence. As indicated, we have given Plaintiffs more than ample time to file their opposition brief as well as their response to Defendant's SMF.

Thus, Defendant Wells Fargo has properly filed its SMF in support of its Summary Judgment Motion (Doc. 50), as required by Local Rule 56.1 of M.D. Pa., and its facts, ¶'s 1-47, are all properly supported by its evidence. Plaintiffs did not properly respond to Defendant's SMF as required by Local Rule 56.1, M.D. Pa., and thus, all of Defendant 's SMF are undisputed. *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michtavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts

---

[6]Since Plaintiffs are represented by counsel, they are deemed to be aware of the pertinent Local Rules of this Court.

as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed).  Regardless of Plaintiffs' failure to properly respond to Defendant Wells Fargo's statement of facts, we accept Defendant's statement of facts since they are all supported by its evidence.

Therefore, we find that the following facts are not disputed:[7]

1.    In 2004, the Pennsylvania Attorney General filed a civil suit against, *inter alia*, Steven Parisi in the Commonwealth Court of Pennsylvania (the "Civil Case").

**Reference:**   <u>Commonwealth v. Steven Paul Parisi, et al.,</u> No. 612-MD-2004; *Deposition of Steven Parisi ("Parisi Dep."), pp. 42-46, Exh 5, p. 9.*

2.    The "Complaint alleged various violations of the [UTPCPL] . . . related to [Parisi's] operation of home construction, land development and mortgage brokering and home improvement business."

**Reference:**   *Parisi Depo., Exh. 7, p. 2, Exh. 6, pp. 8-11.*

3.    In particular, the Attorney General alleged that Steven Parisi and others conspired to deliberately fail to disclose certain information and conspired to bury closing costs thereby artificially inflating the value of a home.

**Reference:**   *Parisi Depo., pp. 49-50, Exh. 5, p. 9, Exh. 6, pp. 8-11.*

4.    The Attorney General also specifically alleged that Steven Parisi reported anticipated income and manipulated the sale and financing in the corresponding transaction and backdated documents and home values.

**Reference:**   *Parisi Depo., pp. 49-50, Exh. 5, p. 9, Exh. 6, pp. 8-11.*

5.    In 2004, the Pennsylvania Attorney General also filed a criminal action against Steven Parisi (the "Criminal Case") in the Court of Common Pleas, Monroe County.

---

[7]All of Defendant Wells Fargo's citations to the record in its SMF are contained in its exhibits, Doc. 50, Appendix.

**Reference:**     *Commonwealth v. Parisi*, *CP-45-CR-0000196-2005 (Monroe C.P.);*
                   *Parisi Depo., p. 56*

6.     On October 13, 2005, the Attorney General filed an Amended Information in the Criminal Case setting forth twelve counts against Steven Parisi, including: four counts of Deceptive or Fraudulent Business Practices (a third degree felony); four counts of Securing Execution of Document by Deception (a second degree misdemeanor); one count of Criminal Conspiracy (a third degree felony); and three counts of Forgery (a third degree felony), all arising from real estate transactions and mortgage applications.

**Reference:**     *Parisi Depo., Exh. 8.*

7.     Eventually, Steven Parisi settled both the Civil Case and the Criminal Case.

**Reference:**     *Parisi Depo., pp. 52, 61-62, Exhs. 7 and 9.*

8.     In the Civil Case, Steven Parisi entered into a Consent Petition.

**Reference:**     *Parisi Depo., Exh. 7.*

9.     As part of the Consent Petition, Steven Parisi agreed, *inter alia*, to be enjoined from working in the mortgage business and pay $1,000,000 to create a consumer restitution fund, $125,000 in fines, and $125,000 in exemplary damages for future public protection purposes.

**Reference:**     *Parisi Depo., Exh. 7.*

10.     In the Criminal Case, Steven Parisi entered into a Plea Agreement with the Attorney General "to resolve all outstanding criminal litigation" between those parties.

**Reference:**     *Parisi Depo., Exh. 9.*

11.     As part of the Plea Agreement, Steven Parisi would "plead nolo contendere to one (1) count of Forgery, a felony of the third degree.  The forgery was committed during the real estate transaction of Joseph and Marie Whetsell."

**Reference:**     *Parisi Depo., Exh. 9.*

12.     For its part, the Attorney General agreed, *inter alia*, to dismiss all remaining criminal counts, and that the Consent Petition would be admissible mitigating evidence.

**Reference:**     *Parisi Depo., Exh. 9.*

13.     As a result of Steven Parisi's plea of nolo contendere, on April 13, 2006, the Honorable Judge Ronald E. Vican found him guilty of Forgery, a felony of the third degree.

**Reference:**     *Parisi Depo., pp. 62-63, 106,; Exh. 10.*

14.     Judge Vican also sentenced Steven Parisi to three years of probation and ordered that Steven Parisi "abide by the terms of the consent decree, which has been formulated in the Commonwealth Court."

**Reference:**     *Parisi Depo., Exh. 10.*

15.     As a result, Steven Parisi became a convicted felon.

**Reference:**     *Parisi Depo., Exh. 10.*

16.     On June 6, 2009, Wells Fargo adopted a policy restricting loans to known convicted felons.

**Reference:**     *Deposition of Kathy Miller ("Miller Depo."), pp. 29-30, 53-54; WF00603.*

17.     Wells Fargo determined that a felony conviction was material because it believed that there was a higher risk of non-repayment with convicted felons.

**Reference:**     *Miller Depo., pp. 24, 59-60.*

18.     The policy did not require loan officers to specifically ask applicants whether or not they were convicted felons during the application process, no did the policy require that Wells Fargo "establish processes to identify convicted felons."

**Reference:**     *Miller Depo., pp. 66-67; WF00139.*

19.     Instead, the policy dictated that "if a borrower is identified in the normal course of [underwriting], then the [lines of business] do not have authority to approve the transaction."

**Reference:**   *Miller Depo., pp. 66-67; WF00139.*

20.     The policy did, however, provide for a possible exception to the restriction, but that exception would have to be requested, reviewed, and approved.

**Reference:**   *Miller Depo., pp. 48-49, 53-54; WF00139, WF00154-157.*

21.     On the same day, Wells Fargo's Corporate Communications Department sent a memorandum to all team members indicating that Wells Fargo's policy restricting loans to known convicted felons would be added to Wells Fargo's "Conventional Underwriting Guidelines with the June 8, 2009 release of Ncyclopedia."

**Reference:**   *Miller Depo., p. 30; WF00603-604.*

22.     On June 8, 2009, the policy was added to Wells Fargo's underwriting guidelines.

**Reference:**   *Miller Depo., p. 30; WF0008; WF00603-604; Deposition of*
*Andrew Karabin ("Karabin Depo."), pp. 66-67, Exh. 8.*

23.     Although the policy was added to the "Title Holder General Requirements" Sub-Section of the "Borrower: General Information" Sub-Section of the "Conventional Underwriting Guidelines," it applied to the entire Conventional Underwriting Guidelines."

**Reference:**   *Miller Depo., pp. 23-24.*

24.     On May 29, 2009, with the help of Wells Fargo loan officer Andrew Karabin, Plaintiffs submitted an application for a residential loan to Wells Faro.

**Reference:**   *Complaint, ¶ 13.*

25.     In conjunction with that application, Plaintiffs executed a Uniform Residential Loan Application on June 4, 2009.

**Reference:**   *Deposition of Colleen Parisi ("C. Parisi Depo."), pp. 12, Exh. 1.*

26.     The Uniform Residential Loan Application executed by Plaintiffs was a generic, industry standard form application which did not reflect company-specific policies and guidelines.

**Reference:**     *Miller Depo., pp. 39-40.*

27.     At the time of the application, Plaintiffs did not inform Wells Fargo that Steven Parisi was a convicted felon; however, Wells Fargo did not specifically ask for this information.

**Reference:**     *Parisi Depo., pp. 106-107.*

28.     On June 29, 2009, Wells Faro sent Plaintiffs a Commitment Letter "explain[ing] all [Parisi's] loan conditions and exactly what documents are needed to finalize [Parisi's] mortgage."

**Reference:**     *Parisi Depo., p. 92, Exh. 14.*

29.     The Commitment Letter also explicitly provided:

**Modification**

We reserve the right to withdraw this approval, or to modify the terms as required, if any material facts appear which have not been previously revealed to us by you.

**Reference:**     *Parisi Depo., Exh. 14.*[8]

30.     According to Steven Parisi, he was not confused by the Commitment Letter.

**Reference:**     *Parisi Depo., p. 107.*

31.     Moreover, he understood that the Commitment Letter was not final and that there were conditions that had to be met before the loan could close.

**Reference:**     *Parisi Depo., pp. 93-94.*

---

[8]*See also* Doc. 50, Ex. A-7.

32.     Indeed, in response to the Commitment Letter, Plaintiffs continued to submit information and documents in support of their application.

**Reference:**     *See e.g., WF00207.*

33.     On July 8, 2009, Plaintiffs' application went to Kimberly Friedman, the underwriter who was to review the last conditions for the commitment.

**Reference:**     *Karabin Depo., p. 64; Miller Depo., pp. 48-49; WF00145; WF00154-157.*

34.     When Ms. Friedman received the application file, she recognized Steven Parisi as a possible felon.

**Reference:**     *Miller Depo., p. 32; karabin Depo., p. 64, Exh. 11; WF00009; WF00142; WF00145.*

35.     She immediately called Steven Parisi and he confirmed that he had previously pleaded no contest to the felony forgery claim.

**Reference:**     *Miller Depo., p. 32; karabin Depo., p. 64, Exh. 11; WF00009; WF00145.*

36.     Ms. Friedman then informed Steven Parisi that Wells Fargo was unable to close the loan due to the policy restricting lending to known convicted felons.

**Reference:**     *Miller Depo., p. 32; Karabin Depo., p. 64, Exh. 11; WF00009; WF00145.*

37.     In accordance with the policy, Ms. Friedman submitted the application to be reviewed for a possible exception.

**Reference:**     *Miller Depo., pp. 48-49; WF00154-157.*

38.     The exception request was reviewed by Mary Kirby, the senior credit manager.

**Reference:**     *Miller Depo., pp. 48-49; WF00154-157.*

16

39.     Ms. Kirby declined the exception request "due to the nature of incidents and transaction being washout, [sic] excessive risk."

**Reference:**     *Miller Depo., pp. 48-49; WF00154-157.*

40.     Ms. Friedman also sent an email to Andrew Karabin, informing him of Wells Fargo's policy regarding lending to known convicted felons and that she had spoken directly to Steven Parisi about it.

**Reference:**     *Karabin Depo., p. 64; Exh. 11; WF00009.*

41.     In that July 8, 2009 email, Ms. Friedman also copied the actual policy language from the June 8, 2009 version of the Conventional Underwriting Guidelines.

**Reference:**     *Karabin Depo., p. 64-65, Exh. 11; WF00009.*

42.     After the declination of the exception, there was discussion about possibly submitting an application in Colleen Parisi's name only.

**Response:**     *Karabin Depo., Exh. 14; WF00001.*

43.     However, Mr. Karabin did not receive a response from Plaintiffs, and on July 20, 2009, Wells Fargo sent a Notice of Action Taken and Statement of Reasons to Plaintiff formally informing them that Wells Fargo "was unable to approve [Plaintiffs'] application at th[at] time" because Plaintiffs "were unable to meet the specific requirements of loan product or program applied for: Convicted Felon."

**Reference:**     *Parisi Depo., Exh. 18.*

44.     Since its implementation in June 2009, Wells Fargo's policy against lending to known convicted felons has been applied to at least one other applicant in addition to Plaintiffs.

**Reference:**     *Miller Depo., pp. 73-74.*

45.     During her deposition, Colleen Parisi confirmed that Wells Fargo did not do anything to confuse her.

**Reference:**     *C. Parisi Depo., p. 28.*

17

46.     Indeed, she confirmed that Wells Faro did nothing wrong at all.

**Reference:**     *C. Parisi Depo., p. 28.*

47.     Significantly, Colleen Parisi is not aware of any breach of contract by Wells Faro or whether Wells Fargo defrauded, deceived, or caused her any damage or harm.

**Reference:**     *C. Parisi Depo., pp. 15-16.*

(Doc. 50, pp. 2-11, ¶'s 1-47).

## IV. Discussion.

Plaintiffs assert a claim for breach of contract and a claim under the UTPCPL, both under Pennsylvania law, against Defendant Wells Fargo over the alleged improper refusal of Wells Fargo to give them a mortgage loan despite sending them with a June 29, 2009 Commitment Letter based on its June 6, 2009 policy which precluded it from lending to known convicted felons.[9]

As stated, Plaintiffs seek to hold Defendant Wells Fargo liable on their two mentioned claims by alleging it approved of their May 29, 2009 mortgage application and issued a Mortgage Commitment on June 29, 2009, which approved and granted their residential mortgage in the amount of $363,000 to be repaid with interest at a rate of 3.875% per annum.  Plaintiffs allege that, based on improper policy that restricted Defendant Wells Fargo from making a loan to a convicted felon, despite no such federal rules or guidelines, Defendant Wells Fargo breached their contract by terminating its June 29, 2009 Mortgage Commitment issued to them.  Plaintiffs also aver that Defendant Wells Fargo engaged in fraudulent or deceptive conduct by leading them to believe that

---

[9]Defendant Wells Fargo's June 6, 2009 policy which precluded it from lending to known convicted felons was added to its underwriting guidelines on June 8, 2009.  Doc. 50, ¶ 22.

they qualified for a mortgage loan, and by then terminating the grant of the loan with no valid basis

for the termination.

We first consider Plaintiffs' breach of contract claim (Count I) against Defendant Wells Fargo.

In *Vassalotti v. Wells Fargo Bank, N.A.*, –F.Supp.2d–, 2011 WL 4402145, *4, the Court stated

that the elements of a breach of contract claim under Pennsylvania law are:

> "there was a contract, the defendant breached it, and plaintiffs suffered
> damages from the breach." *McShea v. City of Phila.,* 606 Pa. 88, 995 A.2d
> 334, 340 (Pa.2010) (citing *Hart v. Arnold,* 884 A.2d 316, 332
> (Pa.Super.Ct.2005)). "It is a familiar rule of contract law, adopted and applied
> by the courts of Pennsylvania, that a party breaches a bilateral contract when
> he does improperly or fails to do something which he has expressly or
> impliedly undertaken to do to facilitate the performance of the other party."
> *Johnson v. Fenestra, Inc. (Erection Div.)*, 305 F.2d 179, 181 (3d Cir.1962)
> (citations omitted).

In *McCloskey v. Novastar Mortg., Inc.*, 2007 WL 2407103, *5 (E.D. Pa. 8-21-07), the Court

stated that an enforceable contract exists under Pennsylvania law if:

> (1) the parties have manifested an intent to be bound by the agreement's
> terms; (2) the terms are sufficiently definite; and (3) there was consideration.
> *In re Estate of Hall,* 731 A.2d 617, 621 (Pa.Super.Ct.1999). *See also*
> *Mazzella v. Koken,* 559 Pa. 216, 739 A.2d 531, 536-37 (Pa.1999) (noting
> that in order to enforce an agreement " 'the minds of the parties should
> meet upon all the terms, as well as the subject-matter, of the [agreement].' "
> (citation omitted)).

Additionally, in *Milandco Ltd., Inc. V. Washington Capital Corp.*, 2001 WL 1609424, *4 (E.D.

Pa. 12-12-01), the Court stated:

> In determining whether there is an intent to be bound, courts must
> examine the entire document in question and the circumstances
> surrounding its adoption. *See id.* at 299. Under Pennsylvania law, when
> one party has expressed an intent not to be bound until a written
> contract is executed, the parties are not bound until that event has

occurred. *See Schulman v. J.P. Morgan Invest. Mgt.,* 35 F.3d 799, 808 (3d Cir.1994) (citation omitted).

Defendant Wells Fargo argues that it is entitled to summary judgment with respect to Plaintiffs' breach of contract claim (Count I) since its Commitment Letter explicitly allowed it to withdraw its preliminary approval of Plaintiffs' mortgage application if it later learned of any material facts which were not previously revealed to it. We find that Defendant Wells Fargo's undisputed evidence shows this contention to be correct. (Doc. 50, Ex. A-7). Defendant Wells Fargo's undisputed evidence shows that Steven Parisi understood the Commitment Letter was not final and that conditions precedent had to be met prior to the closing on the mortgage loan. (*See* Doc. 50, p. 8, ¶ 31 and Ex. A-7). Also, Defendant Wells Fargo's undisputed evidence shows that after it issued the June 29, 2009 Commitment to Plaintiffs, it learned, on July 8, 2009, a material fact with respect to Plaintiffs, namely that Steven Parisi was a convicted felon. (*Id.*, pp. 8-9, ¶'s 34-35). After Steven Parisi confirmed to Kimberly Friedman, Defendant Wells Fargo's underwriter assigned to review the final conditions for the Commitment, that he was a convicted felon, she informed him that Defendant Wells Fargo could not close the loan due its policy of precluding lending to known convicted felons. (*Id.*, ¶ 36).

We agree with Defendant Wells Fargo that its undisputed evidence shows that it had an intent not to be bound by the Commitment unless the loan conditions contained in it were met. We also agree with Defendant Wells Fargo that its Commitment Letter had a modification provision, as detailed above, and that Steven Parisi admitted it did not confuse him. (Doc. 50, p. 8, ¶'s 29-30). The evidence shows that Defendant Wells Fargo learned, after it issued its Commitment Letter to Plaintiffs and during the underwriting process, that Steven Parisi was a

convicted felon.  As such, the binding modification provision allowed Defendant Wells Fargo to withdraw its Commitment.  Thus, we find that Defendant Wells Fargo's summary judgment motion should be granted with respect to Plaintiffs' breach of contract claim (Count I).

Defendant Wells Fargo also argues that it is entitled to summary judgment with respect to Plaintiffs' UTPCPL claim since there is no evidence that it defrauded them.  Defendant Wells Fargo also points out that its undisputed evidence shows that Steven Parisi admitted the modification provision of the Commitment Letter did not confuse him.  Further, Defendant Wells Fargo demonstrates that Colleen Parisi testified that Wells Fargo did not do anything to confuse her and that Wells Fargo did not defraud or deceive her.  (Doc. 50, p. 8, ¶'s 30 and p. 11, ¶'s 45-47). Further, Colleen Parisi testified that Defendant Wells Fargo did not cause her any damage or harm. (*Id*.).

In *Vassalotti v. Wells Fargo Bank, N.A.*, –F.Supp.2d–, 2011 WL 4402145, *6, the Court stated that the elements of a private cause of action under Pennsylvania's UTPCPL are:

> [Plaintiff]  brings a claim against Wells Fargo under the "catch-all" provision of the UTPCPL that prohibits "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201–2(4)(xxi). "To bring a private cause of action under the [Consumer Protection Law], a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 224 (3d Cir.2008) (citing *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 438 (Pa.2004)). Thus, a plaintiff alleging deceptive conduct must satisfy three elements:
>
>> First, a plaintiff must allege facts showing a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances. Next, the plaintiff must allege justifiable reliance, in other words that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the defendants' misrepresentation or deceptive conduct. Finally, the plaintiff must allege

that this justifiable reliance caused ascertainable loss.

*Seldon v. Home Loan Serv., Inc.,* 647 F.Supp.2d 451, 470 (E.D.Pa.2009). Pennsylvania's "UTPCPL is to be liberally construed to effectuate the legislature's goal of consumer protection." *Keller v. Volkswagen of America, Inc.,* 733 A.2d 642, 646 (Pa.Super.Ct.1999).

In the present case, Defendant Wells Fargo argues as follows regarding Plaintiffs' UTPCPL claim:

> Wells Fargo learned of Steven Parisi's status as a convicted felon for the first time during the normal course of underwriting. Because Wells Fargo had adopted a policy restricting loan to convicted felons, it withdrew its preliminary approval of Plaintiffs' application. As evident from the fact that Wells Fargo conducted a second review to determine whether an exception could be made for Plaintiffs (and that Wells Fargo has applied this policy to at least one other applicant), there is simply no element of fraud here. Moreover, even if the elements of fraud were not required, which they are, Plaintiffs' claim still fails as nothing in the record demonstrates any deceptive acts or practices and, indeed, Plaintiffs admitted as much in discovery.

(Doc. 49, p. 16).

Based on the undisputed evidence, we agree with Defendant Wells Fargo and its stated reasoning, and find that its Summary Judgment Motion should be granted with respect to Plaintiffs' UTPCPL claim (Count II).

## VI. Recommendation.

Based on the above, it is respectfully recommended that Defendant Wells Fargo's unopposed Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c) **(Doc. 48)** be granted on its merits, and that Judgment be entered in favor of Defendant Wells Fargo and against Plaintiffs

with respect to both Counts I and II of Plaintiffs' Complaint.  It is further recommended that this action be closed.[10]


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: October 31, 2011**

---

[10]As indicated above, Defendant Wells Fargo was the only remaining Defendant in this case.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN P. PARISI and            :
COLLEEN E. PARISI,              :         CIVIL ACTION NO. **3:CV-09-2399**
                                :
            Plaintiffs          :         (Judge Caputo)
                                :
            v.                  :         (Magistrate Judge Blewitt)
                                :
WELLS FARGO HOME MORTGAGE,      :
INC., et al.,                   :
                                :
            Defendants          :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 31, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_____          s/ Thomas M. Blewitt
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

**Dated: October 31, 2011**